STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **B.H., K.B., T.H., and R.B.**

**No. 17-0515** (Monroe County 16-JA-10, 16-JA-11, 16-JA-12, & 16-JA-13)

## MEMORANDUM DECISION

Petitioner Mother C.H., by counsel Denise N. Pettijohn, appeals the Circuit Court of Monroe County's May 9, 2017, order terminating her parental rights to B.H., K.B., T.H., and R.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Martha J. Fleshman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying her a post-dispositional improvement period, (2) finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected, (3) terminating her parental rights without considering less-restrictive alternatives, and (4) denying her post-termination visitation with the children without considering her bond with the children and their best interests individually.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, the DHHR filed an abuse and neglect petition against petitioner. The DHHR alleged that it received a referral that petitioner, while intoxicated, wrecked her car with the children inside. A Child Protective Services ("CPS") worker arrived at the scene and spoke to fourteen-year-old B.H., who reported that her mother was driving, while intoxicated, with the children present. B.H. reported that just prior to the wreck, petitioner called her boyfriend and lied about having a wreck to see if he "cared about her." B.H. reported that petitioner then stopped alongside the road, at which point B.H. threw the keys in an attempt to protect herself and her siblings. Petitioner then "guilted" B.H. into finding the keys. After resuming their route, petitioner again called her boyfriend and began screaming at him, driving at a high rate of speed,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

until she lost control of the vehicle and crashed. Petitioner reportedly blew a 0.18 on a breathalyzer administered by law enforcement and then refused to undergo further testing, denying that she was drunk. The DHHR also alleged that petitioner showed a depraved indifference to the wellbeing of her children, refused to take responsibility for the crash, had been the subject of prior CPS cases in which her children were removed from her custody, and had not benefitted from professional help in the past. Specifically, the DHHR previously provided petitioner with parenting and adult life skills, transportation, in-patient rehabilitation, random drug screens, and safety services, among other things.

In November of 2016, the circuit court held an adjudicatory hearing in which petitioner stipulated that the children were neglected as a result of creating an environment which "could have a negative effect on the children's wellbeing." The circuit court accepted petitioner's stipulation and granted her a post-adjudicatory improvement period. As part of her improvement period, petitioner was required to (1) obtain and maintain employment; (2) seek and maintain appropriate housing limited to her immediate family; (3) learn to demonstrate money management skills; (4) participate fully with service providers and follow their recommendations in order to address her substance abuse issues; (5) submit to random drug and alcohol screens; (6) participate in parenting and adult life skills and demonstrate internalization and utilization of those skills; (7) participate in multidisciplinary team ("MDT") meetings; and (8) provide up-to-date contact information throughout the pendency of the proceedings, among other things.

In December of 2016, the circuit court held a review hearing during which it was advised that there had been issues with petitioner's alcohol screens. The DHHR also advised the circuit court that R.B.'s father recently filed a domestic violence protective order against petitioner after she showed up at his house in the middle of the night. The MDT recommended that the case be set for disposition. Less than a week later, another domestic violence protective order was filed against petitioner after she went to her mother's home, while intoxicated, and physically assaulted her mother in the children's presence.

The circuit court held two dispositional hearings in February and March of 2017, during which it heard the testimony of several witnesses, including a CPS worker, petitioner's evaluating psychologist, and the child B.H. The CPS worker testified that petitioner had a history with CPS dating back to 2006 due to issues with substance abuse. The CPS worker further testified that petitioner failed to comply with the majority of the terms and conditions of her post-adjudicatory improvement period and failed to admit any type of substance abuse until January of 2017, when she finally acknowledged her substance abuse during an MDT meeting. Due to petitioner's continued alcohol abuse, the CPS worker testified that she was not sure the DHHR could ensure the safety of the children if they were returned to petitioner's custody. The evaluating psychologist then testified that he evaluated petitioner in October of 2016 and authored a report in December of 2016. The psychologist testified that petitioner's prognosis in remedying her problems was poor and that he did not feel that any prior recommendations made in his December report would facilitate minimally adequate parenting within the typical timeframe of a case. Thereafter, the child B.H. testified that she did not want to return to her mother's custody and that she thought it best that she and her siblings remain with their grandmother. The child stated that this was the third time she and her siblings had been removed from their mother's custody and that if petitioner was going to improve, she would have already

done so. The child stated that her mother continued to have substance abuse problems, stating "[t]here's always something, whether it's drugs or – it was drugs the last two times, now it's alcohol." The child further testified that in December of 2016 petitioner came to the grandmother's house inebriated and woke all the children up in the middle of the night. The child testified that petitioner pulled the grandmother to the floor and was pulling her hair out. The child stated that she and her siblings had to wrestle petitioner off of their grandmother, lock her out of the home, and call 9-1-1. Petitioner's mother also testified to this incident.

After hearing all the evidence, the circuit court found that petitioner continued to be addicted to alcohol and had made little to no progress towards achieving the goals set in her post-adjudicatory improvement period. The circuit court found that petitioner failed to internalize the information being taught through her parenting classes. Further, the circuit court found that, until recently, petitioner did not have a job, nor had she demonstrated the ability to manage money or live independently. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the children's welfare. The circuit court denied petitioner's motion for a post-dispositional improvement period and her motion for post-termination visitation and terminated her parental rights to the children.[2] It is from this May 9, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-dispositional improvement period. We disagree. Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a parent an improvement period at disposition if, "the

---

[2]B.H.'s father was deceased at the time the petition was filed. The fathers of K.B. and T.H. voluntarily relinquished their parental rights. According to the parties, these three children are in the home of their maternal grandmother with a goal of adoption there. R.B. was placed in the home of his father after his father's successful completion of an improvement period and the dismissal of the petition against him.

[parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period . . . ." Here, petitioner was previously granted a post-adjudicatory improvement period. The record is clear that petitioner failed to establish a substantial change in circumstances since her initial improvement period or that she was likely to fully participate in a new improvement period.

At the dispositional hearing, the circuit court was presented with evidence that petitioner only minimally complied with certain terms and conditions of her post-adjudicatory improvement period while failing to comply with others. Petitioner alleged throughout the proceedings that she was applying for jobs but only succeeded in securing employment right before the dispositional hearing. However, when contacted by a CPS worker, the employer could not verify how many hours petitioner would be working. Further, petitioner was required to obtain and maintain independent housing. The record indicates that petitioner moved three times throughout nine months and always lived with family members. Petitioner was also required to maintain negative drug and alcohol screens, yet tested positive, dilute, or refused to screen a total six times, all of which were treated as failing the screens. Petitioner was arrested and had domestic violence protective orders filed against her twice during the pendency of the underlying proceedings. Thus, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Further, petitioner's assertion that she demonstrated a substantial change in circumstances is without merit. While petitioner claims that her recent employment and attempts to participate in substance abuse treatment are sufficient evidence of a substantial change in circumstances, the record demonstrates that petitioner had known of these requirements since June of 2016 and only attempted to comply with them at the last minute. As such, we find no error in this regard.

Petitioner next argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected. We find petitioner's argument is without merit. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As previously mentioned, petitioner failed to substantially comply with the terms of her improvement period. In fact, petitioner's behavior progressively worsened and culminated in her physically assaulting her mother, while intoxicated, in the children's presence. Petitioner's behavior demonstrated that she did not internalize any concepts taught through her services in either of her abuse and neglect proceedings. Petitioner's first proceeding was initiated, in part, due to her substance abuse. Despite knowing of her substance abuse problems in both the prior proceedings and the underlying proceedings, petitioner continued to render positive screens. As such, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse.

Petitioner next argues that the circuit court erred in terminating her parental rights without first considering other less-restrictive dispositional alternatives. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be

4

substantially corrected in the near future" and that termination is necessary for the children's welfare. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

As previously mentioned, the circuit court correctly determined that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected due to petitioner's continued substance abuse and failure to remedy her issues. Further, the circuit court noted that at least two of the four children refused to visit or live with petitioner and that termination was also necessary for the children's welfare. As such, the circuit court did not err in terminating petitioner's parental rights without the use of less-restrictive dispositional alternatives. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation. Petitioner specifically argues that the circuit court erred in denying post-termination visitation without considering the children's best interests and without considering each child individually. However, we find no error in this regard. We have previously held that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest. Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002).

Contrary to petitioner's argument, the record is clear that the circuit court did consider the children's best interests on an individual basis. In fact, the circuit court specifically addressed the desires of both B.H. and R.B. before the CPS worker clarified that she had spoken to the three oldest children and none of them desired visitation with petitioner. The youngest child was too young to voice an opinion at that time. The circuit court found that ordering the children to participate in visitation against their wishes would cause them to be "victimized." Additionally, while petitioner alleges that she has a strong bond with her children, their refusal to participate in

visitation with her says otherwise. Petitioner also argues that the circuit court erred in leaving further decisions regarding visitation to the discretion of the DHHR and the guardian. The circuit court found that it would reconsider the issue of visitation upon the recommendation of the DHHR or the guardian, ultimately leaving the decision in the hands of the circuit court. Based on the evidence outlined above, we find that the circuit court did not err in denying petitioner's motion for post-termination visitation as it was clearly in the children's best interest to do so.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 9, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker